# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CLIMAX PORTBLE MACHINE TOOLS, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **TRAWEMA GMBH**, a foreign company, **GÜNTER CRAMER**, an individual, **SIMON HECK**, an individual, and **JOHN DOES 1 through 3**, individuals, <br><br> Defendants. | Case No. 3:18-cv-1825-AC <br><br> **OPINION AND ORDER** |

John Rothermich, K&L GATES LLP, 1 SW Columbia Street, Suite 1900, Portland OR 97204; Philip M. Guess, K&L Gates LLP, 925 4th Avenue, Suite 2900, Seattle, WA 98104. Of Attorneys for Plaintiff.

Michael E. Haglund, Christopher Lundberg, and Eric J. Brickenstein, HAGLUND KELLEY LLP, 200 SW Market Street, Suite 1777, Portland, OR 97201. Of Attorneys for Defendants Trawema GmbH, Günter Cramer, and Simon Heck.

**Michael H. Simon, District Judge.**

United States Magistrate Judge John V. Acosta issued Findings and Recommendation in this case on November 13, 2019. ECF 37. Judge Acosta recommended that Defendants' motion to dismiss for lack of personal jurisdiction should be granted and this case should be dismissed without prejudice. Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). Plaintiff timely filed an objection (ECF 40) to which Defendants responded. ECF 43. Plaintiff objects to the entirety of the findings and recommendation. After the considering the issue *de novo*, for the reasons discussed below, the Court declines to adopt the Findings and Recommendation and denies Defendants' motion.

A. **Legal Standards**

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving such a motion on written materials, rather than after an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). Although a plaintiff may not rest solely on the bare allegations of its complaint, a court must take uncontroverted allegations in the complaint as true. *Id.* In addition, a court must resolve conflicts between the parties over statements in affidavits in the plaintiff's favor. *Id.*

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L); *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 657 P.2d 211, 212 (Or. 1982). Thus, the Court need only determine whether its exercise of personal jurisdiction over Defendants would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *see also Hydraulic Servocontrols*, 657 P.2d at 212.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id.* at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

Plaintiff does not assert general jurisdiction but only specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)).

> As to specific jurisdiction, [the Ninth Circuit] generally conduct[s] a three-part inquiry—commonly referred to as the minimum contacts test—to determine whether a defendant has sufficient contacts with the forum to warrant the court's exercise of jurisdiction:
>
> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable."

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of satisfying the first

two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If a plaintiff does that, the burden of satisfying the third prong then shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 476-77. "Generally, '[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].'" *Freestream Aircraft*, 905 F.3d at 603 (alterations in original) (quoting *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)).

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The purposeful direction test, often called the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (citations omitted). The key, however, is where the allegedly wrongful conduct took place. *Freestream Aircraft*, 905 F.3d at 604-06. For tortious conduct that takes place within the forum state, the purposeful availment test under *Paccar* is appropriate, while the purposeful direction analysis is appropriate for tortious conduct that takes place outside the forum state but has an effect within the forum state. *Id.* ("Read together, those statements comparing within-forum-state versus out-of-forum-state conduct, and contract versus tort actions, suggest that a purposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state. . . . This review of the history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state. *Paccar* was rooted in the well-settled understanding that the commission of a tort within the

forum state usually supports the exercise of personal jurisdiction. . . . The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors.").

**B. Discussion**

Plaintiff alleges that Defendants Günter Cramer and Simon Heck (collectively, the "Individual Defendants"), two former employees of Plaintiff's German subsidiary Climax GmbH, and the Individual Defendants' new employer, Defendant Trawema GmbH ("Trawema"), misappropriated Plaintiff's confidential information and used it to the detriment of Plaintiff. Specifically, Plaintiff alleges that the Individual Defendants, while still employed by Plaintiff, downloaded confidential files from Plaintiff's computer server in Oregon and otherwise obtained confidential design files from Plaintiff's headquarters in Oregon so that Trawema could manufacture copies of two of Plaintiff's products and sell them in competition with Plaintiff. Defendants moved to dismiss based on lack of personal jurisdiction.

Judge Acosta applied the effects test in analyzing personal jurisdiction. That test requires an "intentional act" aimed at the forum. Judge Acosta found that the Individual Defendants were authorized to access the confidential files during their employment, and thus that the Individual Defendants' acquisition of the trade secrets was not through an "improper means." Judge Acosta therefore found that the alleged misappropriation, and what he found to be the associated "intentional act" for jurisdictional purposes, occurred in Germany where Defendants allegedly used or disclosed the trade secrets, and not in Oregon where the trade secrets were acquired.

Plaintiff argues that this conclusion by Judge Acosta was erroneous. Plaintiff asserts that the Amended Complaint alleges that the Individual Defendants obtained the trade secrets with the intent to steal that information and use that information to compete with Plaintiff, making the acquisitions of the trade secrets wrongful. Plaintiff also argues that even if the Individual Defendants' acquisitions of the trade secrets were not in and of themselves wrongful, those acts

still support personal jurisdiction because the Ninth Circuit instructs that all contacts are considered in a jurisdictional analysis, not only wrongful contacts. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc)) ("In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant."). Plaintiff also argues that the Court should not consider "improper means," because that relates to the merits of Plaintiff's trade secrets claims and is not appropriate in a motion brought under Rule 12. Plaintiff asserts that the Court should instead consider whether the Individual Defendants engaged in intentional acts directed at the forum that are the "but for" cause of Plaintiff's alleged harm, which Plaintiff contends is the appropriate effects test standard. Plaintiff argues that the Individual Defendants' contacts with Oregon, including their acquisitions of the trade secrets, meet that test.

Plaintiff also argues that the Court has jurisdiction over Trawema, the corporate defendant, based on its ratification of the acts of its founder, Günter Cramer, and because Simon Heck acted as Trawema's agent in the final months of his employment with Plaintiff. Plaintiff, however, did not allege that Mr. Heck acted as an agent of Trawema in acquiring the trade secrets, or that Trawema ratified the allegedly wrongful conduct of the Individual Defendants.

1. **Whether a tort occurred in Oregon—Purposeful Availment**

Given the Ninth Circuit's guidance in *Freestream Aircraft*, the threshold question is whether part of the alleged tortious conduct occurred in Oregon.[1] If so, the *Paccar* purposeful availment analysis is appropriate, and not the effects test under *Calder*. *See Freestream*

---

[1] Because all of Plaintiff's alleged claims arise out of Defendants' alleged misappropriation of trade secrets, the Court analyzes whether the factual allegations involving that conduct support personal jurisdiction.

*Aircraft*, 905 F.3d at 606 ("[T]he 'effects' test appears unnecessary where, as here, part of the alleged tort occurred in [the forum]." (alterations in original) (quoting *Martensen v. Koch*, 942 F. Supp. 2d 983, 994 (N.D. Cal. 2013))). Although *Freestream Aircraft* involved tortious conduct and alleged contacts where the tortfeasor was physically present in the forum state, the Ninth Circuit specifically noted certain types of contacts for which the effects test would not be appropriate, even though the contacts did not involve the tortfeasor being present in the forum state. This included sending a cease and desist letter to the forum state and the serving of process in the forum state. *Id.* Thus, for the *Paccar* analysis to apply, the alleged tortfeasor need not be present in the forum state.

Plaintiff alleges that at all relevant times it maintained the alleged confidential information on its server, known as the "the Vault," in Newberg, Oregon. Plaintiff concedes that the Individual Defendants had authorization during their employment to access the Vault for legitimate work purposes. Plaintiff alleges, however, that *during* and after their employment the Individual Defendants "misappropriated" trade secrets, that this misappropriation was willful and malicious, and that the Individual Defendants requested and obtained trade secret information from the Newberg headquarters "for the purpose of using this information for a competitive enterprise." Although the allegations could have been clearer about the Individual Defendants' alleged intent when they allegedly acquired the trade secrets from Oregon, the allegations are sufficient at this stage of the litigation to show that Plaintiff is alleging that the Individual Defendants did not have permission to access the alleged trade secrets to use for a competitive enterprise, this was their intent in accessing and acquiring Plaintiff's alleged trade secrets, and thus they did not have permission for their alleged acquisition of the trade secrets. Plaintiff's allegations also show that the Individual Defendants knew that the alleged trade secrets were

located in Oregon, because the Individual Defendants knew that the Vault was in Oregon, and because the Individual Defendants contacted persons in Oregon to request certain trade secret information and access to those trade secrets. Further, the declaration filed by Mr. Cramer demonstrates his knowledge that the server was located in Oregon.

The Individual Defendants submitted declarations stating that they did not access Plaintiff's server or acquire Plaintiff's trade secret information for any unauthorized purpose. Plaintiff submitted email correspondence showing that the Individual Defendants requested information from the Vault and from Oregon employees related to the allegedly reverse-engineered machines, and a declaration explaining how the machines could not have been reversed-engineered without the trade secret information. Thus, the parties dispute the Individual Defendants' intent related to their acquisition of the alleged trade secrets and their purported use of those trade secrets. Disputed factual contentions, however, do not defeat personal jurisdiction on a motion under Rule 12(b)(2). *See Schwarzenegger*, 374 F.3d at 800.

Plaintiff alleges that the Individual Defendants, while in Germany, accessed the Vault, in Oregon, and allegedly accessed trade secret information for an unauthorized purpose with an improper intent to take that information for a competitive entity. The question for jurisdiction purposes, therefore, is whether that alleged act constituted committing a tort "in Oregon" or the tort of misappropriation in Germany, with an effect in Oregon. The Court finds that the better analysis is that it was a tort that was at least in part committed in Oregon, even though the Individual Defendants were not physically present in Oregon, and thus falls under the "purposeful availment" *Paccar* analysis.

Other courts similarly have described this type of tort in the "purposeful availment" context instead of, or along with, "purposeful direction." For example, the Second Circuit

analyzed a case involving similar facts in *MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012). In *MacDermid*, the plaintiff alleged that a former employer accessed the plaintiff's server and obtained trade secret information and then improperly used that information. The Second Circuit, in reversing the district court and finding personal jurisdiction over the former employee, explained:

> "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). Physical presence in the forum state, however, is not required. *Id.* at 476.
>
> We believe that this test is met here. Deiter purposefully availed herself of the privilege of conducting activities within Connecticut because she was aware "of the centralization and housing of the companies' e-mail system and the storage of confidential, proprietary information and trade secrets" in Waterbury, Connecticut, and she used that email system and its Connecticut servers in retrieving and emailing confidential files. Most Internet users, perhaps, have no idea of the location of the servers through which they send their emails. Here, however, MacDermid has alleged that Deiter knew that the email servers she used and the confidential files she misappropriated were both located in Connecticut. She used those servers to send an email which itself constituted the alleged tort. And in addition to purposefully availing herself of the privilege of conducting computer activities in Connecticut, she directed her allegedly tortious conduct towards MacDermid, a Connecticut corporation. *Cf. Calder*, 465 U.S. at 790 (holding California jurisdiction to be proper over Florida writer and publisher who directed their tortious conduct, defamation, toward a California resident).

*Id.* at 730. Thus, it appears that the Second Circuit found jurisdiction under purposeful availment, and found, in addition, jurisdiction under *Calder* through purposeful direction.

Other courts also have found that acquisition of trade secrets from a server in the forum state with knowledge of its location, or other intentional and knowing improper use of a computer server in the forum state, creates enough minimum contacts to support personal

jurisdiction, without analyzing the effects test. *See, e.g.*, *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1248 (10th Cir. 2000) (finding when email was accidentally routed to another company's server, after the defendant was notified of the mistake and continued to allow the email to be routed to the server, the defendant's conduct in allowing the routing and accessing the plaintiff's computer was knowing and intentional and therefore supported personal jurisdiction, and noting that "[i]n analogous situations, courts have held the use of a computer or network service located in a particular state created sufficient contacts to establish personal jurisdiction"); *Vivint, Inc. v. Bailie*, 2017 WL 396655, at *3 (D. Utah Jan. 30, 2017)[2] (finding sufficient minimum contacts when the plaintiff alleged that the defendant knew where the server was located, accessed the server remotely, removed customer information, and used that information to solicit customers in other states); *Rhapsody Sols., LLC v. Cryogenic Vessel Alternatives, Inc.*, 2013 WL 820589, at *5 (S.D. Texas Mar. 5, 2013) ("Plaintiff's causes of action arise out of or relate to INOX's contacts with the forum. As set forth above, Plaintiff has produced evidence that INOX knew that the Exceed and INOVA software were located on CVA's server in Texas and that INOX regularly logged onto, accessed, and used both the Exceed software and the INOVA software. Numerous courts have exercised personal jurisdiction over nonresident defendants where the minimum contacts with the forum consisted of committing a tort through accessing a server located in the forum state." (footnote omitted)) (citing cases); *accord NTE LLC v. Kenny Constr. Co.*, 2015 WL 6407532, at *4 (N.D. Ill. Oct. 21, 2015) ("Post-*Walden*, purposeful availment for intentional torts depends on whether the defendant knows he is committing a tort in the forum. Therefore, determining whether accessing Illinois-

---

[2] The court in *Vivint* notes the effects test, but does not appear to apply it.

based servers constitutes targeting the forum raises the question of whether or not Nalcor knew of the servers' location at the time of the activity.").

Plaintiff adequately alleges that the Individual Defendants knew that the Vault was in Oregon. Thus, the proper analysis for Plaintiff's claims is the *Paccar* purposeful availment analysis, because part of the alleged tort of misappropriation of trade secrets occurred in Oregon. This part of the tort occurred when the Individual Defendants are alleged to have knowingly accessed the server they knew was located in Oregon to acquire trade secret information for an unauthorized and improper purpose. *See MacDermid*, 702 F.3d at 730; *NTE LLC*, 2015 WL 6407532, at *4; *Rhapsody Sols*, 2013 WL 820589, at *5; *accord Freestream Aircraft*, 905 F.3d at 606.

Along with the Individual Defendants' knowledge of the location of the Vault, Plaintiff alleges the following: (1) during their employment the Individual Defendants misappropriated trade secrets; (2) during their employment the Individual Defendants requested and obtained trade secret information from the Oregon headquarters for the purpose of using the information for a competitive enterprise; (3) the Individual Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious; (4) Defendant Cramer personally requested from Plaintiff's Newberg headquarters specific trade secret information on the products that Plaintiff now allege Defendant Cramer's new company Trawema has copied and is selling; and (5) Defendant Heck personally requested from Plaintiff's Newberg headquarters specific trade secret information in January 2016 on the products alleged to have been copied by Trawema and a few months later, in May 2016, Defendant Heck started his employment with Trawema after he was laid off by Plaintiff. Considering these allegations, and the additional evidence submitting during the

briefing on Defendants' motion, the Court finds that the Individual Defendants have sufficient minimum contacts with Oregon to support personal jurisdiction.

Defendants argue that under *Walden*, knowledge that a plaintiff is located in a state, contacts with that plaintiff, and knowledge that harm will occur in a state is no longer sufficient grounds on which to base personal jurisdiction. *Walden* holds that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [them]." 571 U.S. at 285. This means that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 284 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). The analysis also must look the defendant's contacts with the forum state, and not with persons who reside there. *Id.* at 285.

The facts alleged and supported by sufficient evidence for a *prima facie* case under the standards for a jurisdictional motion are that the Individual Defendants knew that the server was located in Oregon and then themselves retrieved items from that server for an unauthorized purpose. Thus, the Individual Defendants are alleged to have engaged in their own acts with respect to a server in Oregon, and not just with persons who reside in Oregon. The Individual Defendants also are alleged to have themselves reached out to Plaintiff's employees in Oregon to request confidential files and access to other confidential information in order to take trade secrets for a competitive entity, not for any legitimate purpose related to their employment. These are not alleged routine communications with an Oregon resident. They rise to the level of contacts with the forum state. All of these allegations involve conduct by the Individual Defendants. Plaintiff is not the only link between the Individual Defendants and Oregon. Thus, *Walden* does not preclude the Court finding personal jurisdiction.

Plaintiff has not, however, alleged or provided sufficient evidence to support personal jurisdiction with respect to Trawema. Plaintiff alleges that Trawema has knowledge that two of its machines were copied from Plaintiff's machines without permission. This, however, does not provide minimum contacts between Trawema and Oregon. Plaintiff does not allege that either Defendant Cramer or Defendant Heck were acting as Trawema's agent when they engaged in their allegedly wrongful conduct. Plaintiff does not allege when or how Trawema "ratified" either of the Individual Defendants' conduct. Indeed, the term "ratified" is nowhere in the Amended Complaint. The only allegation relating to Trawema is that it bought a tool from an Oregon company, and this allegation is an insufficient contact on which to support personal jurisdiction.

### 2. Whether there was an effect in Oregon—Purposeful Direction

As an alternative basis for jurisdiction, assuming all of the alleged underlying tortious conduct is considered outside Oregon, with only an effect felt in Oregon, and the purposeful direction test therefore applies, the Court still has personal jurisdiction over the Individual Defendants. Under the purposeful direction test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206.

Some courts expressly have applied the effects test in considering conduct similar to the alleged conduct and have found it sufficient to support personal jurisidiction. *See, e.g.*, *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 825-27 (N.D. Cal. 2014) (applying the effects test before the Ninth Circuit clarified how torts should be analyzed in *Freestream Aircraft*, and finding the test met for all causes of action based on allegations that the defendant knew where the plaintiff's computer system was located, remotely accessed the computer system, and obtained secure information without permission, despite the defendant's affidavit denying that

conduct). The Individual Defendants are alleged to have intentionally accessed Plaintiff's server, in Oregon to obtain trade secret information for an unauthorized purpose. The Individual Defendants also are alleged to have intentionally contacted Plaintiff's employees in Oregon to obtain trade secret information. These are intentional acts. Plaintiff submitted supporting evidence, so there is more in the record than bare allegations. The Individual Defendants also are alleged to have known that the server was in Oregon. Thus, all the acts were aimed at the forum state.

The Individual Defendants are alleged to have engaged in these acts with the intent to misappropriate trade secrets to help establish and aid a competitive entity. It is reasonable that they would know this would harm Plaintiff in the forum state. Thus, all three prongs of the effects test are met and the Court finds enough minimum contacts related to the Individual Defendants. For the reasons discussed above, however, the effects test is not met with respect to Trawema.

### 3. Fair Play and Substantial Justice

The exercise of jurisdiction must also "comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476. "Once minimum contacts is shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). The defendant then "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

The considers several factors in this analysis, including:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

> controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002)).

The Individual Defendants are accused of "intentionally accessing a former [employer's] databases for financial gain." *NetApp*, 41 F. Supp. 3d at 828. This a significant purposeful injection into Oregon's affairs, and Oregon has a significant interest and adjudicating this dispute. *Id.*; *see also MacDermid*, 702 F.3d at 730-31. The Court recognizes the burden to the Individual Defendants in subjecting them to suit in Oregon when they live in Germany, but "courts have appropriately exercised jurisdiction over foreign parties." *NetApp*, 41 F. Supp. 3d at 828 (finding reasonable personal jurisdiction over Australian defendant alleged to have improperly accessed California computer system). Moreover, the only alternative jurisdiction suggested by Defendants is Germany, which is equally burdensome on Plaintiff.

As explained by the Second Circuit in conducting a similar analysis in the factually similar case of *MacDermid*:

> Having considered [the reasonableness] factors, we conclude that they support the exercise of personal jurisdiction in this case. First, although Deiter would have to travel to Connecticut to defend this suit, this burden alone does not render the exercise of personal jurisdiction unreasonable. *See Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir.1999) (holding that burden on Japanese defendant was insufficient to overcome its minimum contacts, particularly because "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago"). Second, both Connecticut and MacDermid have significant interests in resolving the matter in Connecticut. Not only is the company based in Connecticut, which is where the majority of corporate witnesses are located, but also Connecticut has an interest in the proper interpretation of its laws. *Chloe*, 616 F.3d at 173 (holding that exercise of personal jurisdiction is reasonable where, *inter alia*, forum state has an interest "in providing effective means of redress for its residents");

PAGE 15 – OPINION AND ORDER

> *Kernan*, 175 F.3d at 244-45 (holding that exercise of personal
> jurisdiction is reasonable in New York where injured plaintiff was
> a New York resident and New York laws indisputably applied). *Cf.
> Metropolitan Life Ins. Co. v. Robertson-Ceco, Corp.*, 84 F.3d 560,
> 574 (2d Cir. 1996) (holding that exercise of personal jurisdiction
> was not reasonable where injury did not occur in forum state and
> plaintiff was not based in forum state). Further, efficiency and
> social policies against computer-based theft are generally best
> served by adjudication in the state from which computer files have
> been misappropriated. Accordingly, we conclude that jurisdiction
> is reasonable in this case.

*MacDermid*, 702 F.3d at 731. The Court agrees with this reasoning. Defendants have not provided a compelling case that some other factor supports a finding that personal jurisdiction is unreasonable. The Court therefore concludes that personal jurisdiction over the Individual Defendants is reasonable in this case.

**C. Conclusion**

The Court declines to adopt the Findings and Recommendation (ECF 37). Defendants' motion to dismiss for lack of personal jurisdiction (ECF 20) is GRANTED IN PART AND DENIED IN PART. It is granted with respect to Defendant Trawema GmbH and denied with respect to Defendants Günter Cramer and Simon Heck. Dismissal of Trawema GmgH is without prejudice and leave to amend is granted with respect to the claims against Trawema GmbH, if Plaintiff can make such allegations in good faith. If Plaintiff believes jurisdictional discovery is required, Plaintiff may file a motion with the Court.

**IT IS SO ORDERED.**

DATED this 19th day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge