UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CLIMAX PORTABLE MACHINE TOOLS,
INC., an Oregon corporation,

                    Plaintiff,

       v.

TRAWEMA GMBH, a foreign company,
GUNTER CRAMER, an individual, SIMON
HECK, an individual, and JOHN DOES 1
through 3, individuals,

                    Defendants.

_____

Case No. 3:18-cv-01825-AC

OPINION AND
ORDER

ACOSTA, Magistrate Judge:

*Introduction*

     Defendants Gunter Cramer ("Cramer") and Simon Heck ("Heck") (collectively "Defendants") move to compel (ECF No. 72, hereafter "Defendants' Motion") plaintiff Climax Portable Machine Tools, Inc. ("Climax") to provide complete answers to Defendants' first set of interrogatories ("Interrogatory" or "Interrogatories") or, alternatively, amend its responses to

PAGE 1 – OPINION AND ORDER

Defendants' requests for admissions ("Admission" or "Admissions").    Based on the representations and allegations contained in Climax's recent motion to amend the complaint, the court grants Defendants' Motion to compel complete answers to Interrogatories No. 2 through No. 7 and amendments to Climax's responses to Admissions No. 9 through No. 14.

*Background*

Climax is an Oregon corporation in the business of designing and manufacturing complex industrial machine equipment.  (Am. Compl., ECF No. 10, ¶¶ 1, 4.)  Defendants are mechanical engineers and former employees of Climax's subsidiary, Climax GMBH, a German company engaged in the business of selling and distributing Climax's products in Europe.  (Am. Compl. ¶¶ 1, 5, 7, 8.)  After leaving Climax in 2014, Cramer founded Trawema, a German company engaged in the design, manufacture, and sale of portable machining tools, which became a direct competitor of Climax.  (Am. Compl. ¶¶ 1, 56.)  Trawema hired Heck as a design engineer in May 2016.  (Am. Compl. ¶ 8.)

Climax alleges Defendants had access to and obtained design documents, drawings, and plans containing extensive trade secret information for two of Climax's most successful products, and that Trawema is currently manufacturing and marketing two products that are "nearly exact copies of Climax products."  (Am. Compl. ¶ 1.)  Climax specifically alleges: "Trawema could not have produced such nearly identical copies of Climax's products without using Climax's own proprietary design documents that the individual Defendants stole, and Trawema knowingly used without authorization." (Am. Compl. ¶ 2.)  Climax asserts claims for violation of the federal Economic Espionage Act and Oregon's Uniform Trade Secrets Act, and common-law claims of conversion and unjust enrichment, all based on Defendants' misappropriation of Climax's confidential information.

PAGE 2 – OPINION AND ORDER

On April 23, 2019, Defendants and Trawema filed a motion to dismiss for lack of personal jurisdiction. The court recommended granting the motion in a Findings and Recommendation dated November 13, 2019 (the "F&R"), finding "Defendants' intentional acts were not expressly aimed at the State of Oregon and did not create the necessary contacts with the State of Oregon to allow this court to exercise personal jurisdiction over Defendants in this lawsuit." *Climax Portable Machine Tools, Inc. v. Trawema GMBH*, Case No. 3:18-01825-AC, 2019 WL 8953357, at *1 (D. Or. Nov. 13, 2019). District Judge Michael H. Simon adopted the F&R with respect to Trawema but denied it with respect to Defendants. (Op. and Order dated March 19, 2020, ECF No. 44 ("Order").) Judge Simon considered Defendants' contacts with the State of Oregon under the "purposeful availment" analysis and found Defendants' knowledge that Climax stored its confidential information on a server located in Oregon, their alleged retrieval of such information from the server for an unauthorized purpose, and their contacts with Climax employees in Oregon for the purpose of requesting confidential files and access to other confidential information were sufficient to establish personal jurisdiction over Defendants. (Order at 7-12.) Judge Simon found an alternative basis for jurisdiction under the "purposeful direction" test, based on Defendants' intentional access of Climax's servers and employees in the State of Oregon for the purpose of misappropriating trade secrets, to establish and aid a competitive entity that resulted in harm in the forum state. (Order at 13-14.)

*Legal Standard*

The scope of discovery in a case is defined in Federal Rule of Civil Procedure ("Rule") 26. Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

PAGE 3 – OPINION AND ORDER

Relevant information need not be admissible evidence to fall within the scope of discovery. *Id.*

The party seeking to compel discovery has the burden of establishing its request is relevant under Rule 26(b)(1). *Sarnowski v. Peters*, Case No. 2:16-cv-00176-SU, 2017 WL 4467542, at *2 (D. Or. Oct. 6, 2017). The party opposing discovery has the burden of showing that discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections. *Id.*; *Yufa v. Hach Ultra Analytics*, No. 1:09-cv-3022-PA, 2014 WL 11395243, at *1 (D. Or. Mar. 4, 2014) ("If a party elects to oppose a discovery request, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome, or not relevant. Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." (citation and quotation omitted)). If a party objects to a discovery request, it is the burden of the party seeking discovery on a motion to compel to demonstrate why the objection is not justified. *Weaving v. City of Hillsboro*, No. CV-10-1432-HZ, 2011 WL 1938128, at *1 (D. Or. May 20, 2011). In general, the party seeking to compel discovery must inform the court which discovery requests are the subject of the motion to compel and, for each disputed request, inform the court why the information sought is relevant and why the objections are not meritorious. *Id.*

*Discussion*

## I. Identification of Misappropriated Documents

### A. Interrogatories

Defendants seek to compel complete responses to Interrogatories No. 4 through No. 7, asserting "Climax's responses are evasive, generalized, and obfuscated by objections." (Defs.' Mot. to Compel ("Mot."), at 3.) Rule 37 controls Defendants' Motion. A propounding party may "move for an order compelling an answer, designation, production, or inspection" if "a party fails

to answer an interrogatory submitted under Rule 33." FED. R. CIV. P. 37(a)(3)(B)(iii) (2019).

Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be

treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4) (2019).

> Defendants' Interrogatories No. 4 and No. 5 ask that Cramer:

> **INTERROGATORY NO. 4:** Identify each document that You claim Cramer misappropriated from Climax at any time, as alleged in the Complaint.

> **INTERROGATORY NO. 5:** For each document identified in response to Interrogatory No. 4, describe in detail the basis on which You contend that Cramer misappropriated the document. Your response to this interrogatory should include, at minimum: (i) the date You claim that Cramer first misappropriated the document; (ii) the means by which You claim Cramer misappropriated the document; and (iii) a detailed description of any evidence you contend supports Your claim that Cramer misappropriated the document (e.g. identifying any witnesses to the alleged misappropriation, describing any forensic analysis that You claim shows Cramer transferred the document outside of Climax's computer network, etc.).

(Birkenstein Decl. dated August 17, 2020, ECF No. 73 ("Birkenstein Decl."), Ex. A at 8, 9.)

Interrogatories No. 6 and No. 7 request the same information with respect to Heck. (Birkenstein Decl.

Ex. A at 11, 12.)

In response to all four Interrogatories, Climax incorporated its general objections and

specifically objected to various Interrogatories on the grounds they are overbroad, unduly burdensome,

or seek information not reasonably calculated to lead to admissible evidence; vague and ambiguous

with regard to the undefined terms of "means,": "evidence," and "forensic analysis; duplicative of

Interrogatories No. 11 and No. 13; request information within Defendant's possession, custody, or

control; seek information that is confidential, sensitive, proprietary, or a trade secret of Climax; or call

for a legal conclusion or analysis. (Birkenstein Decl. Ex. A at 8-11.) Climax then answered

Interrogatory No. 4 as follows:

> The Climax FF8200 and Climax LM6200 products each involve development of hundreds of different design files, all of which are required to manufacture the finished product. Cramer had access to the design files and specifications for the

PAGE 5 – OPINION AND ORDER

Climax products at issue in this case, which were located on Climax's Oregon Vault server, throughout his employment by Climax GmbH. Defendant Trawema could not have developed or manufactured the two copied products identified in the complaint without wrongfully using and relying on Climax's design files. To date, Climax does not know precisely each instance that Cramer accessed or downloaded Climax files related to the two Climax products at issue, and the defendants are objecting to producing such information in discovery. Climax objects to identifying every single design file for each machine as sought in this interrogatory.

(Birkenstein Decl. Ex. A at 8-9.) In its answer to Interrogatory No. 5, Climax incorporated its answer to Interrogatory No. 4 and represents it "will produce non-privileged responsive documents located after a reasonable search reflecting Cramer's use of, access to, or possession of the relevant design files," acknowledge it is still investigating Cramer's contacts with Oregon, and reserves the right to supplement its response. (Birkenstein Decl. Ex. A at 9-10.) Climax's response to Interrogatories No. 6 and No. 7 were substantially similar, respectively. (Birkenstein Decl. Ex. A at 10-11.)

On August 26, 2020, nine days the filing of Defendants' Motion on August 17, 2020, Climax amended its Interrogatory responses and again asserted the general objections and specific objections asserted in its initial response. (Rothermich Decl. dated August 31, 2020, ECF No. 76 ("Rothermich Decl."), Ex. 2 at 8-11.) Climax then offered the following additional response to Interrogatory 4:

Climax objects to this interrogatory as overbroad and unduly burdensome to the extent that it would require Climax to list every design file, specification document, and design drawing for the Climax FF8200 and Climax LM6200.

Climax has in its possession hundreds of files containing drawings, specifications, and CAD files for the Climax FF8200 and Climax LM6200 products. Cramer had access to these design files, drawings, and specifications which were located on Climax's Oregon Vault server, throughout his employment by Climax GmbH. Climax does not currently know precisely which documents or files Cramer used to design Trawema's two copied products. Defendant Trawema could not have developed or manufactured the two copied products identified in the Complaint without wrongfully using and relying on Climax's design files containing, at a minimum, the specifications for the parts and assemblies listed in response to Interrogatories Nos. 10 and 12 below. To date, Climax does not know precisely each instance that Cramer accessed or downloaded Climax files related to the two Climax products at issue. That said, Climax's investigation of Cramer's theft of the design

PAGE 6 – OPINION AND ORDER

files is still ongoing and it reserves the right to supplement its answer to this interrogatory with additional information.

(Rothermich Decl., Ex. 2 at 8-11.)  In its opposition to Defendants' Motion to compel, Climax asserts it has provided all responsive documents of which it is currently aware with respect to Interrogatories No. 4 and No. 6, claims producing all design documents for the two stolen products is unduly burdensome, and notes Defendants are in custody of the documents they misappropriated.

In the First Amended Complaint filed on January 23, 2019 ("Complaint"), Climax alleged "Defendants systematically obtained from Climax's Newberg headquarters the design documents, drawings, plans and specifications for two of Climax's most successful products" and Trawema subsequently produced and marketed two "virtually identical products." (Am. Compl. ¶¶ 1, 2.) Climax asserted Defendants "could not have produced such nearly identical copies of Climax's projects without using Climax's own proprietary deign documents that the individual Defendants stole, and Trawema knowingly used without authorization." (Am. Compl. ¶ 2.)  Climax asked the court to "order the Defendants to return all stolen design materials to Climax."  (Am. Compl. ¶ 3.)

On November 25, 2020, Climax filed a motion to amend its complaint a second time in this case.  (*See* Pl.'s Mot. to Am. Comp., ECF No. 92 ("Mot. to Am.").)  In that motion, Climax represents that it now has identified at least some of the documents it claims defendants stole from it:

> Climax's proposed amendments will also add new allegations that Heck misappropriated Climax's design information as an agent of Trawema.  A forensic analysis of computers used by Heck while working at Climax GmbH revealed that he misappropriated Climax's confidential information by downloading product design files to an external USB device.

(Mot. to Am. at 2-3.)  Paragraph 52 of Climax's proposed amended complaint specifically alleges:

> Heck accessed a computer at Climax GmbH after his last formal day as a Climax GmbH employee and downloaded Climax's confidential and proprietary information, including CAD files and design documents and specifications for the

PAGE 7 – OPINION AND ORDER

two copied Climax products at issue and/or earlier models of those machines to an external USB device.

(Mot. to Amend, Ex. 1 at 15.)

Whether or not Climax's motion to amend is granted, its representations supporting the motion to amend establish that it possesses documents containing the information Defendants have requested in Interrogatory Nos. 4, 6, 6, and 7. Climax's prior objections to these Interrogatories therefore are moot, and it must answer Interrogatory Nos. 4, 6, 6, and 7. Accordingly, this part of Defendants' Motion is GRANTED.

  B. *Admissions*

Rule 36 governs requests for admissions and allows a party "to serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either. FED. R. CIV. P. 36(a)(1)(A) (2019). A party requesting an admission may move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted. FED. R. CIV. P. 36(a)(6) (2019). Although the district court ordinarily should first order an amended answer and deem the matter admitted only if a sufficient answer is not timely filed, this determination, like most involved in the oversight of discovery, is left to the sound discretion of the district court. *See David v. Hooker, Ltd.*, 560 F.2d 412, 418-19 (9th Cir. 1977); *French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1969). "The general power of the district court to control the discovery process allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981).

As discussed above, Climax's acknowledgement that it now has identified at least some of the documents it claims Defendants misappropriated, its denials to the disputed Admissions no longer are partially or even entirely accurate, and its objections are moot.  Accordingly, it must amend its answers to Admissions No. 9 through No. 14 are improper.  Therefore, this part of Defendants' Motion is **GRANTED**.

## II.  Personal Jurisdiction

In Interrogatories No. 2 and No. 3., Defendants seek "each Oregon contact that You contend supports the exercise of personal jurisdiction by the United States District Court for the District of Oregon over Cramer [Heck] in this Lawsuit.  (Birkenstein Decl. Ex. A at 5-6.)  In its response, Climax incorporated its general objections and added specific objections that Judge Simon had decided the personal jurisdiction issue, that the requested information is in Defendants possession, custody, or control, and that the term "each" is overly broad and unduly burdensome. (Birkenstein Decl. Ex. A at 5-6.)

With respect to Cramer, Climax responded to Interrogatory No. 2 as follows:

> Subject to and without waiving the foregoing objections, Climax hereby incorporates by reference all relevant statements, information and evidence contained in its briefs, declarations and exhibits submitted in opposition to the Defendants' motion to dismiss and the findings and analysis in the Court's opinion and order, dated March 19, 2020.

> Climax further responds that Cramer had access to the design files and specifications for the Climax products at issue in this case, which were located on Climax's Oregon Vault server, throughout his employment by Climax GmbH. Defendant Trawema could not have developed or manufactured the two copied products identified in the complaint without wrongfully using and relying on Climax's design files.  To date, Climax does not know precisely each instance that Cramer accessed or downloaded Climax files related to the two Climax products at issue, and the defendants are objecting to producing such information in discovery. The defendants are also objecting to producing any documents or evidence that would support their defense that Trawema reverse engineered Climax's machines.

Climax further responds that Cramer visited Climax's Oregon headquarters at least six times between the beginning of his employment by Climax GmbH to October 2011, including visits in approximately October 2010, February 2011, July 2011, August 2011, and October 2011. Cramer also regularly engaged in videoconferences and telephone calls with Climax's Oregon engineers throughout his employment by Climax GmbH, and had numerous email communications concerning the Climax products at issue in this case. Cramer also regularly requested and obtained from Climax's Oregon engineers Climax's design files maintained on the Oregon Vault server. Climax objects to listing the details of these interactions that are reflected documents. Climax will produce non-privileged documents located after a reasonable search reflecting particular instances of Cramer's contacts with Climax's Oregon facilities and/or employees.

Furthermore, Climax's investigation and discovery concerning Cramer's contacts with Oregon are ongoing, and Climax therefore reserves the right to supplement this response as additional information or documents become available.

(Birkenstein Decl. Ex. A at 5-6.) Climax provided a substantially similar response to Interrogatory No. 3 with the absence of any indication Heck ever visited Climax's Oregon headquarters. (Birkenstein Decl. Ex. A at 6-7. In its opposition brief,[1] Climax "deleted its objection that the jurisdictional issue was already decided, and it clarified that its overbroad and burdensome objection simply concerns Climax's unwillingness to list numerous jurisdictional contacts reflected in Climax's document production." (Opp'n at 8-9.) Climax also represented that it had produced all responsive information of which it is aware, explaining: "In light of the fact that the Defendants left Climax four and six years ago, the only specific information Climax currently has concerning their contacts with Oregon is reflected in the emails, calendar invitations and similar documents Climax has gathered and produced in response to Defendants' requests for production." (Opp'n at 9.)

---

[1] Climax also removed its specific objection based on Judge Simon's ruling on Defendants' motion to dismiss in its amended response to the Interrogatories. (Rothermich Decl. Ex. 2 at 5.)

PAGE 10 – OPINION AND ORDER

First, to the extent that Climax's newly acquired information affects its answers to Defendants' disputed jurisdictional discovery requests, Climax must amend it previous answers as appropriate. Therefore, this part of Defendants' Motion regarding jurisdictional discovery is **GRANTED**.

Second, Defendants impliedly acknowledged Climax produced evidence that Defendants communicated regularly with Climax employees in Oregon and also had access to Climax's confidential information, but they assert Climax must additionally "distinguish between the contacts it asserts give rise to its claims and those it concedes are benign." Defendants ask Climax to argue inferences and provide legal argument, which Climax is not required to do. Climax has adequately answered Interrogatories No. 2 and No. 3, and, accordingly, this part of Defendants' Motion is **DENIED**.

## Conclusion

Defendants' Motion (ECF No. 72) to compel is GRANTED IN PART and DENIED IN PART, as explained above. Climax shall provide Defendants with an amended response to the Interrogatories and Admissions within twenty-one (21) days of entry of this Opinion and Order.

DATED this 17th day of December, 2020.

_____
JOHN V. ACOSTA
United States Magistrate Judge